**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
UNITED STATES OF AMERICA,

        -against-

DOMINIC GUIDO, ET AL.,

                *Defendants*.
-------------------------------------------------------X

11 Cr. 403 (KMW)

# DOMINIC GUIDO'S MEMORANDUM IN AID OF SENTENCING

 

Gerald L. Shargel
Ross M. Kramer
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166

*Attorneys for Dominic Guido*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-----------------------------------------------------------X**
UNITED STATES OF AMERICA,

                                                                                                           11 Cr. 403 (KMW)

      -against-

DOMINIC GUIDO, ET AL.,

           *Defendants*.
**-----------------------------------------------------------X**

### DOMINIC GUIDO'S MEMORANDUM IN AID OF SENTENCING

      This memorandum is respectfully submitted in support of our request that the Court impose a sentence of probation under the unique facts of this case.

      Dominic Guido's personal history and character, as detailed below, are extraordinary. His devotion to family, friends, employees, co-workers and community is remarkable. The 57 letters attached to this memorandum provide first-hand support for these contentions.

      Redacted

      The offense conduct in this case – though clearly very serious – was a tragic aberration in an otherwise overwhelmingly positive and constructive life. We respectfully submit that Dominic Guido is a person of remarkable character who has demonstrated that he will never re-offend, and that a prison sentence is unnecessary in this case.

1

## Dominic Guido's Personal History and Extraordinary Character

Dominic Guido's childhood was marked by tragedy. His father was killed in an automobile accident when Dominic was less than 4 years old. His father had pulled over on the Verrazano Bridge because his car had broken down, and he was struck and killed by a passing truck. Guido's younger brother was only two months old at the time. Guido's mother had worked her whole life, and was forced to work twice as hard going forward to make ends meet for her young family. Likewise, Guido was forced at a very early age to take responsibility for himself, his younger brother, and much of the household work. Guido remains extremely devoted to his mother, and has provided her with life-long support. (See Exhibit G, Letter of Catherine Guido Caputo.)

Guido's mother re-married when he was a teenager. Her husband now suffers from advanced Parkinson's Disease and is in hospice care in their home. Guido visits his step-father regularly and helps his mother to care for and comfort him. (See id.)

Guido began working at Port Elizabeth in New Jersey in 1983, when he was 19 years old. He was given the job by an uncle who ran a company at the Port, but Guido was never shown favoritism. He began his career as a "lasher" – a longshoreman who uses long steel rods to connect and loosen shipping containers being transported together. This is an extremely difficult job. Over the course of years, Guido excelled in his work at the Port, and worked his way up through his uncle's company. Eventually, on his own merit, in 1996 he was promoted to maintenance foreman. He lost that job, and his career at the Port, as a result of his offenses in this case.

While working at the Port, Guido also worked with his wife to build a thriving day-care and early childhood education business. Guido met his wife Laura when they were both 16 years

old, and they have been together ever since. When she left her job in retail after several years in the business, her dream was to work with children. Guido helped her achieve that goal. (See Exhibit Y, Letter of Laura Guido.) They began in 1990 with a small day-care service that they operated out of the basement of their own home, watching a handful of neighborhood children. Over the course of years, they slowly built the business, first moving out of their basement into a dedicated day-care and early childhood education facility that they rented. They eventually purchased that property. Over the past 25 years they have opened four more facilities. They now operate in five towns in central New Jersey, employing approximately 80 teachers, directors and staff, and providing day-care and educational services for approximately 350 children. They built the business together from the ground up, and it is now an indispensable member of the community in each of the towns in which it operates. Today, Guido is a hands-on supervisor at all five locations, assisting with maintenance, operations, and the various day-to-day issues that arise. It is a true family business: his wife runs one of the schools, and his mother runs another.

    Perhaps the most remarkable and telling anecdote demonstrating Guido's character arises out of the day-care business. Guido and his wife have two children: Redacted (see Exhibit V, Letter of Redacted); and Redacted (see Exhibit T, Letter of Redacted). Despite already having a complete family, Guido took particular notice of a six year old named Redacted. Redacted was a student enrolled at one of the day care centers that Guido and his wife own. Guido and his wife learned that Redacted was in the care of her elderly grandmother because her mother was a drug addict who had abandoned her shortly after birth. After a time, Redacted grandmother approached Guido and his wife and told them that she would have to withdraw Redacted from the center because she had run out of money for tuition. Sympathetic to the family's plight, Guido and his wife unhesitatingly allowed Redacted to

3

continue attending the school without tuition. Shortly thereafter, when Redacted grandmother became seriously ill, Guido and his wife asked her what the plan was for Redacted future care. Redacted grandmother had no plan – she knew that she did not want to return Redacted to the custody of her drug addicted mother, but had no other options. *Less than 24 hours after hearing this, Dominic Guido and his wife approached* Redacted *grandmother and told her that they would like to take in* Redacted *as part of their own family.* Redacted grandmother agreed. Guido and his wife applied for and received guardianship of Redacted from a New Jersey court. They took Redacted into their home and their family, raised her as one of their own children, and provided her with, among other things, a private school education. (See Exhibit P, Letter of Peter L. Festa, Esq.) *Remarkably, now 21 years old,* Redacted *works at one of the day-care centers owned by Guido and his wife – one of the very same day-care centers from which she was adopted.* (See Exhibit EE, Letter of Redacted .)

    In his letter to the Court, Peter L. Festa, Esq. writes:

> I remember Dominic's wife, Laura, discussing Redacted with Dominic, and Dominic did not hesitate to tell his wife 'do whatever we need to do to bring this girl into our family and she will become our daughter.' I was present when they were discussing this issue and I was stunned, quite frankly, at how quickly Dominic made the decision and the commitment to Redacted … In the end, it was Dominic who made that decision without a second thought to completely and totally change this young girl's life. (Exhibit P.)

    In her letter, Dominic Guido's wife Laura writes:

> [H]is first order of business was to commit to give this little girl Redacted a wonderful, safe home. I was scared and apprehensive and Dominic, my husband, convinced me everything would be ok and we could do this. I would have the little girl I always dreamed of; Redacted would have the mom, dad and the security she deserved. It made me love him even more with the fact that he could love this little seven year old girl that was not even ours from birth. (Exhibit Y.)

4

This is a truly unique and remarkable story of compassion and generosity, and a perfect encapsulation of the extraordinary character that Guido has demonstrated time and again throughout his life.

This story does not stand alone.  The 57 letters attached to this memorandum demonstrate that Dominic Guido is an atypical defendant and a person of extraordinary character.  He is a valued family member, friend and neighbor.  The letters elaborate on his generosity, compassion and positivity, and the myriad ways he has improved the lives of those around him.  Among other things, the letters include anecdotes reflecting Guido's concern for those in need (see Exhibit A, Letter of Vincenzo Abbatemarco; Exhibit VV, Letter of John R. Raab); his support and encouragement for friends and neighbors experiencing difficult times (see Exhibit B, Letter of Maria Ackerman; Exhibit F, Letter of Judy Burnett; Exhibit M, Letter of Daniel DiArchangel; Exhibit WW, Letter of Asta Riporti; Exhibit YY, Letter of Kenneth Russo; Exhibit CCC, Letter of Laurie Tatick); and his practice of opening his home to others (most notably after Hurricane Sandy) (see Exhibit C, Letter of Louis J. Alfano; Exhibit D, Letter of John Anastario; Exhibit ZZ, Letter of Brenda Santoni).  The letters provide numerous examples of Guido's charitable spirit and sincere compassion.  Letters come from, among others, family, friends, neighbors, employees at his day-care centers (see Exhibit N, Letter of Kim Early; Exhibit AA, Letter of Heather Hanley; Exhibit BB, Letter of Victoria Hendrickson; Exhibit DD, Letter of Susan King), and former co-workers at the Port (see Exhibit Q, Letter of Michael T. Finizio).

The detailed anecdotes demonstrating Guido's good character are too many to list.  As one example, Guido's wife Laura describes how he once took in a young homeless man who needed help:

> After some time we realized that he was homeless and living on the street. …
> [M]y husband Dominic with his trusting heart, wanted to do everything he could

5

> to make this boy's life better.  My husband took this boy into our home, gave him a job, clothes, took him to the doctor, dentist, we took him on vacations and made him part of our family. … I believe my husband truly saved this young boy's life. (Exhibit Y.)

As another example, John R. Raab writes how Guido took it upon himself to care for a local homeless man in Woodbridge Township, NJ:

> Dominic and I would routinely bring him food to eat daily.  During the winter months and while traveling from Dominic's schools we would swing by his hangouts and regularly pick him up and take him to a food establishment and local roadside motels and Dominic would set him up there for a week at a time and encourage him to take a hot shower to warm up and clean up and stay sheltered inside during the worst of the weather and snow storms in the most difficult of winter months.  After dropping John off at the motels we would go shopping for him and Dominic would buy all kinds of materials and aids for him. (Exhibit VV.)

We submit that these extraordinary letters of support are strong testament to Dominic Guido's good character.  They place Guido far outside the norm in the realm of federal sentencing, and should weigh heavily in favor of a sentence of probation.

As stated in the letter of Vincent DeCandia (Exhibit J), Guido is also a pillar in his community that should be allowed to remain in place.  DeCandia writes:

> Dominic's community, his family, his friends, and may acquaintances are all better off with him in their lives.  We need him and we rely on him.  He is the backbone and the glue that keeps many things together.  (Exhibit J.)[1]

---

[1] It should be noted that Guido's adult life was also marked by serious adversity.  In 2001, Guido was in a devastating boating accident in Florida.  His left arm was almost completely severed, and he sustained other traumatic physical injuries.  He spent almost four months in the hospital, and underwent numerous surgeries to reattach his arm and address his other wounds.  It was remarkable that he survived at all, but he lost most of the use of his arm and his injuries are a constant source of pain and discomfort.  (See Presentence Investigation Report, dated May 13, 2015, at ¶ 88) (citing letter of Dr. O. Alton Barron).

6

## **Dominic Guido's Genuine Remorse and Rehabilitation**

Redacted

Many of the letters attached to this memorandum also describe Dominic Guido's deep and genuine remorse for his offenses, and the personal anguish it has caused him over the past

five years.  He has openly and candidly acknowledged and admitted his wrongdoing, and has expressed how truly sorry he is for his transgressions.  (See, e.g., Exhibit Q, Letter of Michael T. Finizio; Exhibit VV, Letter of John R. Raab.)  In his letter to the Court, Michael T. Finizio writes:

> He has not hid[den] from his mistake.  He has stood up, acknowledged it, and has worked hard to restore his standing amongst his friends and family as that loving, jovial, supportive husband, father, brother and son.  (Exhibit Q.)

John R. Raab writes:

> The sincere and bitter regret and remorse he cannot hide at times is obvious to us all.  He has lived with it and it is no great secret to those close.  His life has been changed and completely turned around and truly not a day goes by that he [doesn't wish] he could change his previous actions[.]  (Exhibit VV.)

Dominic Guido's letter to the Court, attached as Exhibit U, expresses in his own words his deep and genuine contrition.

> Redacted

Dominic Guido has done everything in his power to demonstrate his remorse and rehabilitation.  He has demonstrated that he is not a risk to re-offend, and that a term of incarceration is unnecessary under the facts of this case.  A term of probation would ensure that Guido is under federal supervision a significant period of time following his arrest.  We respectfully submit that this would be a result sufficient, but not greater than necessary, to fulfill the goals of sentencing in this case.

## CONCLUSION

For all of the reasons set forth above, we respectfully request that the Court impose a sentence of probation under the unique facts of this case.

Dated: January 11, 2016

*Gerald Shargel/RMK*
Gerald L. Shargel
Ross M. Kramer
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166

*Attorneys for Dominic Guido*